# Nettie Masure, Appellee, v. Ismar Masure, Appellant.

## Gen. No. 16,412.

1. APPEAL—*when not dismissed where insufficient abstract of record.* Although the abstract of the record filed in an appeal from a divorce decree is insufficient under the rules of the court, such appeal will not be dismissed as the public has a substantial interest in the case.

2. CITY COURT—*process cannot extend beyond limits of city.* A City Court has no power to send its process beyond the territorial limits of the city in which it is established.

3. DIVORCE—*void process not valid as a constructive service.* A void process served on the defendant in a divorce proceeding cannot be held a valid constructive or substituted service.

4. DIVORCE—*jurisdiction.* The statutes must be followed strictly to secure jurisdiction in a divorce proceeding.

5. DIVORCE—*appearance.* A special appearance and plea do not give a court general jurisdiction of the defendant in a divorce proceeding.

Appeal from the City Court of Chicago Heights; the Hon. HOMER ABBOTT, Judge, presiding. Heard in this court at the March term, 1910. Reversed and remanded with directions. Opinion filed June 17, 1912.

NOVAK & POLLACK, for appellant; OTTO KERNER, of counsel.

GEORGE A. BRINKMAN, for appellee.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

October 1, 1909, Nettie Masure, the appellee in this cause, filed in the City Court of Chicago Heights a bill in chancery praying a divorce from her husband, Ismar Masure, on the ground of extreme and repeated cruelty. The bill prayed that process—a writ of summons—should issue against the defendant, Ismar Masure, commanding him to appear before the City Court of Chicago Heights in the City of Chicago Heights at the term beginning on the 3rd Monday of November, 1909. Summons was issued accordingly, which by its terms commanded the Sheriff of Cook county to summon Ismar Masure so to appear if he should "be found in said county of Cook or city of Chicago Heights." It was returned by the Sheriff of Cook county and filed in the cause November 15, 1909. The return was: "Served the within writ on the within named Ismar Masure by delivering a copy thereof to him this 14th day of October, 1909. Christopher Strassheim, Sheriff, by John P. Collins."

November 16, 1909, Novak and Pollack as solicitors

for Ismar Masure filed an appearance in the cause, signed by them, reading: "We hereby enter the special appearance of the defendant to the above entitled cause for the sole purpose of litigating or testing the question of jurisdiction," and contemporaneously filed a plea which set forth that the City Court of Chicago Heights ought not to take cognizance of the cause, alleging (1) that the City of Chicago Heights, where the complainant, Nettie Masure, in her bill alleged that she resided, was in Cook county; (2) that the complainant did not in fact at the time of the commencement of the suit, reside there; (3) that the defendant at said time did not reside there and does not and never did; (4) that he is and at said time and at the time of the service of process on him was a resident of Chicago; (5) that service of process was had on him in Chicago; (6) that there is a Circuit Court of Cook county having jurisdiction of matters of the nature in said bill alleged and of the persons of complainant and defendant; and (7) that at the time the bill was brought all said matters were pleadable originally and exclusively in said Circuit Court of Cook county and not in the City Court of Chicago Heights.

The court caused the plea to be set down for hearing and overruled it, ordering the defendant "to plead, demur or answer instanter." The defendant refused to plead further in any form and stood by his plea as filed. His default was then taken and complainant's bill of complaint taken as confessed. The court then heard testimony in open court and entered a decree on January 22, 1910, reciting the foregoing proceedings and finding that it had jurisdiction of the persons and subject matter; that the complainant was at the time of the filing of the bill an actual resident of the city of Chicago Heights and had been a resident of Illinois for a year; that "defendant was sufficiently and duly served with personal notice of the pendency of said suit and made special appearance herein and by filing

his plea thereby filed his appearance for all purposes.''

Passing then on the merits of the cause, the decree adjudged the defendant to have been guilty of cruelty as alleged in the bill, and dissolved the marriage and gave the custody of a child of the parties to the complainant. From this decree the defendant, Ismar Masure, prayed and obtained an appeal to this court.

On the hearing on the plea its truth was admitted by the complainant except as to the allegation that the complainant did not at the time the bill was filed reside in the City of Chicago Heights, and the conclusion of law that the City Court of Chicago Heights did not have jurisdiction of the subject matter of the cause. On this admission the defendant admitted that it could not prove the allegation that the complainant did not reside in Chicago Heights, and abandoned that part of his plea.

The contentions of the appellant are, first, that City Courts do not have jurisdiction to grant divorces; and, second, that the City Court of Chicago Heights could not get jurisdiction of the defendant by process on him outside its jurisdiction, which is confined to the City of Chicago Heights, and that the plea was therefore good.

The appellee maintains, on the other hand, first, that the defendant made a general appearance by his plea, although by his contemporaneous appearance he attempted to limit it; second, that a divorce proceeding is not a proceeding *in personam,* but *in rem,* the *res* being the status of matrimony by which the parties are mutually affected; that in cases in *rem* ''substituted'' service is sufficient; and that in this case, as the defendant, by the notice which he received from the copy of the summons, was put in a better position even than that in which notice by publication would have left him, he cannot complain, and the decree *in rem* dissolving the status should be held good; third, that by statute, if the statute be properly construed by anal-

ogy, the service was good. The Divorce Statute provides that "the proceeding shall be had in the county where the complainant resides, but process may be directed to any county in the State." By close analogy, appellee contends, if the City Courts of Illinois have jurisdiction at all in divorce cases, such proceeding must be begun in the city where the complainant resides, but process may be directed at least to any part of the county in which the city is situated. Fourth, that the City Court of Chicago Heights has jurisdiction of divorce proceedings by the combined effect of the Divorce Statute of March 10, 1874, and of the act concerning City Courts of May 10, 1901, under which it was organized. Sections 4, 5 and 6 of the Divorce Act declare—re-enacting with the addition of the Superior Court of Cook county as a proper forum) the provisions of the Revised Statutes of 1845—that the Circuit Courts of the respective counties and the Superior Court of Cook county shall have jurisdiction in all cases of divorce and alimony allowed by the act, that the proceedings shall be had in the county where the complainant resides, but process may be directed to any county in the State, and that the process, practice and proceedings under this act shall be the same as in other cases in chancery.

Section 1 of the City Court Act of 1901 provides that the several courts of record now existing in and for cities, and such as may thereafter be established in and for any city, shall have concurrent jurisdiction with the Circuit Courts within the city in which the same may be, in all civil cases and in all criminal cases arising in said city, and in appeals from justices of the peace in said city, and that the course of procedure and practice in such courts shall be the same as in the Circuit Courts so far as may be.

The contentions of the respective parties as thus stated indicate all the material questions in this case. The appellee does indeed with justice point out that

the abstract of the record filed by the appellant is insufficient under the rules of this court, and that we might, under those rules, dismiss the appeal. But this rigorous application of the rule we shall reserve for some case in which the public has not a substantial interest, as it has in every divorce suit.

We think the court was wrong in holding that the plea was bad. It should have been held good and the complainant required to take issue on it. In our opinion it was good even without the allegation of the complainant's non-residence, and if she chose, on its being held good, to confess it with that exception, it should have then been held a sufficient defense to her action, which should have been dismissed. The arguments to the contrary made by the complainant are plausible, but not, in our opinion, sound.

We may assume, without deciding the point, that although the remedy of divorce is a purely statutory one, and entrusted to certain named courts, the fact that by statute general concurrent jurisdiction with those courts in the County of Cook has been given to an entirely new court, endows that new court with power to administer this remedy. The Supreme Court did not, in Dixon v. Dixon, 61 Ill. 324, find it necessary to decide this point, although it was raised by the plea passed on therein, and we do not find it necessary to do so in this case. The question was not the one in issue in Ladies etc. v. Harrington, 227 Ill. 511; although we may note that the reasoning of a portion of the opinion of the court in the last case would seem to throw a serious doubt on the power claimed for the court below over the subject matter. But in both Dixon v. Dixon and Ladies, etc., v. Harrington it was distinctly decided—as it had been many times before in the cases cited in the Harrington case, (p. 517)—that a City Court has no power to send its process beyond the territorial limits of the city in which it is established.

Service, therefore, of that process outside of the city did not secure for the court jurisdiction over the person of the defendant.

The complainant, however, maintains, as before indicated, that the action being one *"in rem,"* "constructive" or "substituted" service was sufficient. That the action of divorce is one *in rem* may be considered to be the decision of our Supreme Court in Dunham v. Dunham, 162 Ill. 589. But although an action *"in rem"* it is something more. It has an individual character of its own, and may be best described by calling it simply "an action to dissolve the marriage relation." Such an action is, according to the language of the opinion in Dunham v. Dunham itself, p. 607, not "favored" by the law. Dunham v. Dunham holds that the marriage status may be destroyed by the action of a foreign court on "substituted" or "constructive" service of a non-resident defendant; but it does not hold, nor has any other court that we know of ever held, that valid "constructive" or "substituted" service can be made except as provided by the statutes of the state where jurisdiction is assumed.

Divorce is a statutory, not a common law matter, and the statutes must be followed to secure jurisdiction. In this case, since the service of the summons was void, there was no service, "substituted" or otherwise, on the defendant, and no jurisdiction in the City Court to render the decree of divorce unless there was a voluntary appearance. This the complainant insists the plea filed contemporaneously with the special appearance furnished. But a divorce case is certainly not the one in which any astuteness can properly be shown to hold an appearance, evidently intended for a special one to challenge jurisdiction, a general one binding the defendant to litigate the cause. The court below in finding in its decree that the defendant by filing his plea thereby filed his appearance for all pur-

poses, completely nullified the effect of the plea, which in a precisely similar case was by the Supreme Court held good and preventing a valid decree of divorce. Dixon v. Dixon, 61 Ill. 324.

The decree of the City Court of Chicago Heights appealed from is reversed and the cause remanded to that court with directions to sustain the plea.

*Reversed and remanded with directions.*